JUNE TERM,
1838.

Harmon
v.
Armstrong.

---

ZEBULON HARMON v. JOHN ARMSTRONG.

A. assigned to B. the balance due on an obligation given by C. on which there was an endorsement of a payment of $179 50. In an action by B. against A. for a deficiency in the obligation, it was proved that A. had given C. not only a receipt for the $179 50, but also, for $51 90, which last receipt was dated only a few weeks before the assignment. Held, that it was not necessary for the assignee, to recover off the assignor the deficiency, that he should have first sued the obligor; because such a suit would have been in the face of the receipt, which was admitted; and there was no proof that the assignee knew of any payments except the one endorsed, and there was a very strong presumption that the assignor did.

APPEAL from the circuit court of St. Charles county.

*Coalter*, counsel for appellant:

It is a general principle that the assignor of an instrument is not liable until after a failure to recover the amount from the maker. For aught that appeared on the trial, the assignee may have recovered from the maker of the instrument the whole amount estimated to be due on the lease at the time of the assignment, or it may be that he can still recover that amount if he will take the proper steps.

This lease and assignment were both executed in the State of Kentucky, and the respective duties and liabilities of the assignor and assignee are to be determined by the laws of that State.

This action was barred by the statute of limitations—see R. C. 1835, p. 393, fixing the period of five years, &c.

It cannot be said that, by Harmon's removal from the State of Kentucky, the running of the statute would have been prevented, for this is not affected simply by a removal, but it must appear such removal did in fact defeat the party of his remedy—Robb v. Shipley, 1 Mo. Dec. 229; Cartmell v. Hopkins, 2 Mo. Dec. 220.

*W. M. Campbell,* counsel for appellee:

Armstrong contends that Harmon is justly bound to pay him the amount of recovery in this case.

1. As assignor for the amount of debt assigned, which, owing to his admitted outstanding receipts, could not have been collected from said Powell by said Armstrong.

2. On the ground of improper concealment of facts and misrepresentation of the amount due at the time of the assignment.

3. That there being two outstanding receipts for $179 50 and $51 90, both admitted to have been executed by Harmon, his assignee, Armstrong was not bound to have prosecuted the suit against said Powell, in opposition to said receipts.

4. That if Harmon had even by mistake executed two receipts and one endorsement of credit for the same money, and then moved to Missouri, that Armstrong could know nothing of such mistake.

5. As to the entry of the judgment, Armstrong contends that the entry, "the judgment of the justice is affirmed," does not vitiate the judgment, being a mere clerical error.

6. This being a summary trial in the circuit court, on an appeal from the justice's court, the same degree of accuracy is not required as in cases originating in the circuit court.

TOMPKINS, Judge, delivered the opinion of the court.

Armstrong brought his action before a justice of the peace against Harmon, and judgment being given there against Harmon, he appealed to the circuit court, where judgment being again given against him, he appeals to this court.

The suit was founded on an account as follows:

Zebulon Harmon to John Armstrong,   Dr.

To amount of a deficiency found to exist in the amount of an article of agreement between Zebulon Harmon and A. O. Powell, which was assigned by said Harmon to John Armstrong on the 19th day of July, A. D. 1831, and which was not paid by said Powell to said Armstrong, because it had been previously paid to said Harmon himself by said Powell, as appears by said agreement and the receipts herewith filed,   $51 90

To interest on same up to this time,   31 24

Total,   $83 14

JUNE TERM,
1838.

Harmon
v.
Armstrong.

On the trial of this cause, the plaintiff read in evidence the following paper, to wit: a lease from said Harmon to A. O. Powell, and an endorsement of a credit, and an assignment made on it by Harmon, the defendant, to Armstrong, the plaintiff; the following is a copy: "The article of agreement between Zebulon Harmon of one part, and A. O. Powell of the other, both of the town of Augusta, and county of Bracken, witnesseth: that the said Harmon agrees to rent unto the said Powell his houses and lot on Water street, &c. and the said Powell agrees to pay to the said Harmon for the rent of the aforesaid premises, the sum of one hundred and fifty dollars per year, for the term of two years," &c.

The endorsement and assignment of this writing is in these words: "July 19th, 1831. Cr. the within obligation with sundry payments up to this date, one hundred and seventy-nine dollars and fifty cents. (Signed) Zebulon Harmon."

"For value received, I assign the balance of the within obligation to John Armstrong. Augusta, July 19th, 1831. (Signed) Zebulon Harmon."

Armstrong, the plaintiff, then read in evidence two receipts of payments on said lease, from said Harmon to said Powell, which are as follows:

"Received of A. O. Powell, fifty-one dollars and ninety-one cents, amount paid John Colglass, for which he is entitled to a credit on his article for house rent. June 23d, 1831. (Signed) Zebulon Harmon."

"Received, July 1st, 1831, of A. O. Powell, one hundred and seventy-nine dollars and forty cents, which is to be credited on his article of house rent, for the house he now lives in. (Signed) Zebulon Harmon."

The execution of both these receipts was admitted by Harmon. It was also admitted that Harmon has lived in this State for several years past, and that the contracts above were made in the State of Kentucky.

This being all the evidence, the defendant moved the court to instruct the jury that the plaintiff having failed to show that he had used due diligence to get the money of Powell, they must find for the defendant. This instruction was refused, and the opinion of the court excepted to. The verdict of the jury being found, a new trial was asked by the defendant, and refused by the court.

The question to be decided is, did the court commit
A. assigned to B. error in refusing to instruct the jury that Armstrong,
the balance due the plaintiff, had failed to show that he had used due dili-
on an obligation gence *to get the money of Powell?*
given by C. on

On the 19th July, 1831, Harmon assigned this instrument of writing to Armstrong, and on the same day he endorses this credit of one hundred and seventy-nine dollars and fifty cents on the writing. It may be reasonably supposed that he did it in the presence of the plaintiff, Armstrong; for he assigns (to use his own words) *the balance of the within obligation to John Armstrong.* It is reasonable to suppose, too, from the language used in the credit endorsed, that he had particularly summed up the credits, in order to show Armstrong how much was due. It is very improbable that, on the 19th July, he should have failed to recollect, when he endorsed this credit and assigned this note, that he had made the two receipts, admitted on the trial by himself to be his own acts, and both of so late a date, the one being dated 1st July, and the other the 23d June last past. It seems that if, in reality, the last receipt for one hundred and seventy-nine dollars and fifty cents was all that ever had been paid to him by Powell, he ought to suffer the consequences of his negligence in leaving the two receipts outstanding in the hands of Powell, by which it appeared that fifty-one dollars and some cents had been paid on the lease more than he had credited. If Harmon had proved that Armstrong had notice of these two receipts when he accepted the assignment, then it might have been necessary for Armstrong to sue. But taking the assigned lease, as it appears he did, without notice of Harmon's receipt of 23d June, for the sum of fifty-one dollars and ninety cents, and Harmon's endorsement being made for one hundred and seventy-nine dollars and fifty cents only, for which another receipt was produced, Armstrong could expect, if he had sued, after seeing these two receipts, nothing but defeat. These things being all considered, make out so strong a case against Harmon, that in my opinion he well deserves to lose the amount of the receipt of 23d June, even if that sum were included in the amount credited on the lease by him.

It was objected, also, that Armstrong was barred by the statute of limitations. It does not appear on the record that the statute was insisted on before the circuit court, and that point not appearing to have been decided, then this court is precluded by the statute from deciding on it—Revised Code of 1835, p. 522, sec. 31.

For the reasons above given, the judgment of the circuit court ought, in my opinion, to be affirmed; and such being the opinion of the other judges, it is affirmed.

Harmon
v.
Armstrong.

which there was an endorsement of a payment of $179 50. In an action by B. against A. for a deficiency in the obligation, it was proved that A. had given C. not only a receipt for the $179 50, but also for $51 90, which last receipt was dated only a few weeks before the assignment. Held, that it was not necessary for the assignee, to recover off the assignor the deficiency, that he should have first sued the obligor; because such a suit would have been in the face of the receipt, which was admitted; and there was no proof that the assignee knew of any payments except the one endorsed, and there was a very strong presumption that the assignor did.